IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KAREN JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | No. 07-2220-KHV |
| UNIFIED GOVERNMENT OF ) | |
| WYANDOTTE COUNTY/KANSAS ) | |
| CITY, KANSAS, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**MEMORANDUM AND ORDER**

Karen Jones sues the Unified Government of Wyandotte County/Kansas City, Kansas ("Unified Government") for gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. This matter comes before the Court on Defendant's Motion For Summary Judgment (Doc. #27) filed February 13, 2008. For reasons stated below, the Court sustains defendant's motion in part.

**I.    Legal Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, Okla.,

942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which [she] carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on her pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the [party] opposing the motion for summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

**II.    Facts**

The following facts are either undisputed or construed in the light most favorable to plaintiff.[1]

The Board of Public Utilities ("BPU") is a governmental entity of the Unified Government.

---

[1] The Court does not consider facts which the record does not support. In addition, the Court does not consider facts which the parties include only in the argument section of their briefs and not in the statement of facts as required by D. Kan. Rule 56.1.

2

Within the water division of BPU, the general line of job progression is as follows: laborer, serviceman, lead man, supervisor, superintendent, director, manager. A lead man heads a three-person crew and supervises other employees at the work site. A supervisor oversees lead men, servicemen, laborers and other non-management positions.

In 1986, plaintiff began working for BPU as a customer service representative. In 1991, she transferred to the water division, where she worked in the following positions: laborer, water serviceman I, water serviceman II, water serviceman III and water serviceman IV.[2] In 2002, plaintiff successfully applied for water quality technician, a position which she currently holds.[3] Some time after June 21, 2005, plaintiff unsuccessfully applied for superintendent of water distribution operations ("superintendent") and supervisor of water distribution-meters ("supervisor").

### A.     Superintendent Position

To qualify for superintendent, an employee must have one to three years of supervisory experience. To fill the position, BPU interviewed one applicant, David Franklin, a white man who had worked as a supervisor for two years. Franklin was the only applicant who had the prerequisite supervisory experience. On January 9, 2006, BPU awarded the superintendent position to Franklin. Jim Epp, director of water operations, selected Franklin for the position. Epp told plaintiff that he did not interview her for the position because she did not have supervisory experience.

### B.     Supervisor Position

To fill the supervisor position, a panel comprised of Franklin and Greg Coia, both

---

[2]     The record does not explain levels of servicemen at BPU.

[3]     The record does not disclose whether a water quality technician is part of the water division and, if so, where the position falls within the general line of job progression discussed above.

3

superintendents, and Sammuel DeLeon of human resources interviewed applicants, including plaintiff. After conducting interviews, the panel collectively ranked Richard Kaminski as lead candidate for the position. Due to an employment matter with Kaminski, however, Epp asked the panel to recommend another candidate.[4] Franklin and DeLeon recommended Monte Cox, a white man who had worked as lead man for seven years. Franklin and DeLeon chose Cox because he had the second highest interview scores and lead man experience. Coia, however, recommended plaintiff or Manuel LeDesma.[5]

Epp reviewed the panel recommendations and selected Cox for the supervisor position.[6] In part, Epp chose Cox because he had worked his way through the line of progression and served as lead man for seven years. Epp believed that Cox's lead man experience helped demonstrate that he was the best candidate for the position. In Epp's opinion, serving as lead man is an important step to being a successful supervisor because a lead man gains experience overseeing co-workers and proving leadership skills. Also, Epp believes that a lead man is exposed to a wide variety of

---

[4] The record does not reveal the nature of the employment matter with Kaminski. Epp's affidavit states that the matter caused him to doubt Kaminski's ability to serve as supervisor. See Affidavit Of James Epp ¶ 12, attached to Defendant's Memorandum In Support Of Motion For Summary Judgment ("Defendant's Memorandum") (Doc. #28) filed February 13, 2008.

[5] Coia testified that he could not remember whether he recommended plaintiff or LeDesma. See Coia Deposition at 23:16-24:12, Exhibit 2 to Defendant's Memorandum (Doc. #28). Later, in the same deposition, Coia said that when Epp told him that he was going to pick Cox, Coia suggested plaintiff, but Epp said no and Coia suggested Ledesma. See id. at 39:23-41:5. Coia stated that he believed that Kaminski was most qualified for the position, followed by plaintiff, then Ledesma. See id. at 41:3-5.
DeLeon and Franklin recall that Coia recommended LeDesma for the supervisor position. Epp recalls that Coia said he would prefer LeDesma, who had the fifth highest interview score. See Affidavit Of James Epp ¶ 15, attached to Defendant's Memorandum (Doc. #28).

[6] The record does not reflect the date on which Epp made the decision. On March 20, 2006, BPU awarded the supervisor position to Cox.

4

technical problems and available solutions, which makes him or her better able to provide advice and guidance to subordinates regarding technical specifications of each job.[7]

Plaintiff had served as an extra lead man at least ten times in the prior two years, but she never held a permanent lead man position. At an unspecified time, Don Gray, then director of water distributions and now manager of BPU, told plaintiff that she would have a better chance at promotions if she obtained a lead man position. In addition, Stephen Green, superintendent of water distribution and maintenance, told plaintiff that holding a lead man position was a good way to gain experience.[8] Plaintiff, however, has never applied for a permanent lead man position.

At an unspecified time at an unspecified work site, plaintiff searched for a couple of hours to find a pipe in the ground. Don Dumovich, whom the record does not identify, told plaintiff to tell him if she could not do the job and he would get a man to do it for her. See Plaintiff's Depo. at 51:5-18, attached to Plaintiff's Response (Doc. #35) filed April 14, 2008. Plaintiff said "that's nice" and turned around. See id. at 51:19-22. Franklin and Green heard the comment and walked away without saying anything.[9] See id. at 51:23-25.

---

[7] Coia believes that lead man experience is not important to serving in the supervisor position. See Deposition of Greg Coia at 26:14-22. In explaining his opinion, Coia testified as follows:
> Lead men are involved with very little customer contact, more mechanical as far as heavy mechanical, excavating, maintaining the street, maintaining the traffic flow. It's just on the scope of making sure their employees are doing their work related to that job.

Id. at 26:25-27:5.

[8] The record does not reveal when Green told plaintiff this information.

[9] Plaintiff contends that at the time of the comment, both Franklin and Green were superintendents. See Plaintiff's Suggestions In Opposition To Defendant's Motion For Summary Judgment ("Plaintiff's Opposition") (Doc. #30) filed March 17, 2008 at 4, ¶ 51. Her record citation,
(continued...)

5

At an unspecified time, Scott Hiatt, plaintiff's supervisor, told plaintiff that she needed to find a rich husband.[10] Plaintiff filed an internal complaint regarding the comment. BPU dropped the complaint and told plaintiff that Hiatt was "just like that." See id. at 25:10-13. Hiatt did not tell plaintiff about classes which she was supposed to attend and did not let her attend the backflow prevention class.[11] After Hiatt left BPU plaintiff attended the backflow prevention class.[12]

At an unspecified time, Ray Northcutt, plaintiff's lab supervisor, told plaintiff that except for the fact that she is a woman, he could not think of any reason why BPU would not promote her to supervisor.[13]

On April 17, 2006, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

---

[9](...continued)
however, does not support this assertion. See Plaintiff's Depo. at 51, attached to Plaintiff's Response (Doc. #35) filed March 17, 2008. If so, it appears that the incident would have occurred after January 9, 2006, when Franklin obtained the superintendent position.

[10]     Plaintiff testified that Hiatt made the comment in late spring or early summer of 2003. See Plaintiff's Depo. at 24:8-20.

[11]     The record does explain the backflow prevention class or reveal when Hiatt refused to let her attend. Plaintiff testified that after she did not get the supervisor position, Gray told her that he would make sure that Hiatt got her into the class so that she could learn more about the department. See Plaintiff's Depo. at 32:18-33:6.

[12]     The record does not reveal when Hiatt left BPU or when plaintiff attended the class. Plaintiff testified that Hiatt left BPU in December of 2005. See Plaintiff's Depo. at 34:5-7.

[13]     The record does not explain the lab supervisor position. Plaintiff's deposition testimony indicates that she reports to two supervisors, Franklin and the lab supervisor, but that Franklin is ultimately responsible for her work. See Plaintiff's Depo. at 13: 21-14:3.
         Plaintiff testified that Northcutt made the comment during ethics training, but she did not state when the training occurred. See Plaintiff's Depo. at 86:6-20.

**III.    Analysis**

Plaintiff claims that because of gender, defendant did not promote her to superintendent and supervisor and denied her training which would have enhanced her qualifications for said positions. See Pretrial Order (Doc. #29) filed March 4, 2008 at 4. Defendant seeks summary judgment on all claims. Regarding failure to promote, defendant asserts that as a matter of law plaintiff cannot establish a prima facie case or pretext. Regarding failure to train, defendant asserts that as a matter of law plaintiff did not exhaust administrative remedies.

    **A.    Failure To Promote**

Plaintiff claims that because of gender, defendant did not promote her to superintendent or supervisor. Under Title VII, an employer may not "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(2). Plaintiff bears the initial burden to make a prima facie showing of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a facially nondiscriminatory reason for its actions. See Reynolds v. Sch. Dist. No. 1, Denver, Colo., 69 F.3d 1523, 1533 (10th Cir. 1995). If defendant articulates a legitimate nondiscriminatory reason, the burden shifts back to plaintiff to present evidence from which a reasonable jury might conclude that defendant's proffered reason is pretextual, that is, "unworthy of belief." Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1165 (10th Cir. 1998) (quoting Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995)).

        **1.    Superintendent**

Regarding failure to promote to superintendent, defendant contends that as a matter

of law plaintiff cannot establish a prima facie case of discrimination or pretext. Plaintiff does not respond to defendant's argument. To establish a prima facie case, plaintiff must show that (1) she is a member of a protected class; (2) she applied for and was qualified for the position; (3) defendant did not promote her; and (4) defendant filled the position or it remained open after defendant rejected her. See Jaramillo v. Colo. Judicial Dept., 427 F.3d 1303, 1306-07 (10th Cir. 2005). Defendant contends that plaintiff cannot establish the second element, i.e. that she was qualified for the position. The Court agrees. The undisputed evidence demonstrates that the superintendent position required a minimum of one to three years of supervisory experience. Plaintiff has produced no evidence that she had such experience or otherwise possessed the objective qualifications to perform the position. See, e.g., EEOC v. Horizon/CMS Heathcare Corp., 220 F.3d 1184, 1195 (10th Cir. 2000) (relevant inquiry at prima facie stage whether plaintiff introduced some evidence that she possesses objective qualifications necessary to perform job sought). On this record, plaintiff has not produced evidence sufficient to create a genuine issue of material fact regarding whether she was qualified for the superintendent position. Defendant is entitled to summary judgment on this claim.[14]

### 2. Supervisor

Regarding failure to promote to supervisor, defendant contends that as a matter of law plaintiff cannot establish pretext.[15] Defendant contends that it did not promote plaintiff to supervisor because Cox was more qualified. Specifically, defendant asserts that Epp selected Cox over plaintiff because Cox had higher interview scores and more experience as lead man. Because

---

[14] In light of this ruling, the Court does not reach defendant's argument that plaintiff cannot show pretext on this claim.

[15] Defendant apparently concedes that plaintiff can establish a prima facie case of discrimination on this claim. See Defendant's Memorandum (Doc. #28) at 14.

defendant has articulated a legitimate nondiscriminatory reason for its action, the burden shifts to plaintiff to present evidence from which a reasonable jury might conclude that defendant's proffered reason is pretextual, that is, "unworthy of belief." Beaird, 145 F.3d at 1165 (quoting Randle, 69 F.3d at 451). Plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted). While "[t]his burden is not onerous . . . it is also not empty or perfunctory." Id. at 1323-24. A plaintiff typically makes a showing of pretext in one of three ways: (1) evidence that defendant's stated reason for the adverse employment action was false, i.e. unworthy of belief; (2) evidence that defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision. See Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000). More specifically, evidence of pretext may include "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria." Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir. 1999).

Plaintiff argues that defendant has not shown that she was less qualified for the position. See Plaintiff's Opposition (Doc. #30) at 7. This argument misses the boat. At the pretext stage, plaintiff bears the burden to show that defendant's proffered reason is unworthy of belief. See Beaird, 145 F.3d at 1165. One way in which plaintiff may accomplish this is to produce evidence which shows

9

that she was more qualified than Cox. See Rea v. Martin Marietta Corp., 29 F.3d 1450, 1457-58 (10th Cir. 1994) (evidence that plaintiff equally qualified insufficient to show pretext but evidence that plaintiff more qualified sufficient to infer pretext). On this record, plaintiff has not done so.[16]

Plaintiff contends that defendant's statement that it did not choose her because she was not a lead man is unworthy of credence. See Plaintiff's Opposition (Doc. #30) at 7. Specifically, plaintiff argues that defendant did not state that lead man experience was a requirement for the job, and that she in fact had experience as lead man. See id. Again, plaintiff's argument misses the boat. Defendant has produced evidence that Epp selected Cox, at least in part, because he had seven years of experience as a lead man. Plaintiff, on the other hand, only worked as an extra lead man some ten times in two years. To demonstrate pretext, plaintiff must show that defendant's explanation is phony, or untrue. See Pignato v. Am. Trans. Air, Inc., 14 F.3d 342, 349 (7th Cir. 1994). Here, the undisputed facts show that Cox had significantly more experience as lead man, and that Epp believed such experience made Cox more qualified to serve as supervisor. On this record, plaintiff has not produced evidence which creates an genuine issue of material fact regarding whether defendant's explanation – that it selected Cox because he had more lead man experience – is untrue.

Plaintiff asserts that BPU tolerated discriminatory statements and actions. See Plaintiff's Opposition (Doc. #30) at 7-8. Specifically, plaintiff states that (1) Hiatt excluded her from backflow prevention classes and told her to marry a rich man; (2) BPU dropped her complaint regarding

---

[16] Plaintiff argues that compared to Cox, she had more college and training and that she only had lower interview scores because Hiatt excluded her from the backflow tester certification class. See Plaintiff's Opposition (Doc. #30) at 7. Plaintiff did not include these facts in her statement of facts. More importantly, in determining pretext, the relevant issue is whether Epp had a good faith belief in his reasons for selecting Cox over plaintiff. See McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1129 (10th Cir. 1998). Plaintiff's evidence does not create a genuine issue of material fact in this regard.

10

Hiatt's statement; and (3) Green and Franklin did nothing when Dumovich stated that he would get a man to do the job for her. Plaintiff, however, provides no evidence which links these actions to Epp's decision to promote Cox to supervisor instead of plaintiff. See Rea, 29 F.3d at 1457 (to show pretext plaintiff must show connection between discriminatory statement and adverse employment action). In other words, even if these facts are true, they do not cast doubt on the veracity of Epp's explanation that he selected Cox over plaintiff because Cox had higher interview scores and more experience as lead man. On this record, plaintiff has not produced evidence which creates a genuine issue of material fact whether defendant's explanation is pretextual.[17] Defendant is entitled to summary judgment on the failure to promote to supervisor claim.

### B. Failure To Train

Plaintiff alleges that because of gender, defendant denied her training which would have enhanced her qualifications for the supervisor and superintendent positions. See Pretrial Order (Doc. #29) at 4.[18] Defendant argues that plaintiff has failed to exhaust administrative remedies on

---

[17] Plaintiff also argues that defendant has articulated contradictory reasons for its action. See Plaintiff's Opposition (Doc. #30) at 8. Plaintiff does not explain this argument. Defendant's explanation for its action – that it picked Cox over plaintiff because he had higher interview scores and more experience working as lead man – is not inconsistent.

[18] In a footnote, defendant asserts that plaintiff includes this claim only in the pretrial order and not in the complaint or amended complaint. See Defendant's Memorandum (Doc. #28) at 18 n.3. Under factual contentions in the pretrial order, plaintiff alleges that "[f]rom 2003 through 2006, [d]efendant discriminated by failing to allow [p]laintiff to receive training which would have enhanced her qualifications." Pretrial Order (Doc. #29) at 4. Defendant apparently did not object to inclusion of these facts in the pretrial order. Pursuant to D. Kan. Rule 16.2(c), the pretrial order controls the subsequent course of the action "unless modified by consent of the parties and court, or by an order of the court to prevent manifest injustice."

Defendant also complains that the pretrial order does not include elements of a claim for failure to train. See Defendant's Memorandum (Doc. #28) at 18 n.3. In the pretrial order, plaintiff lists one theory of recovery, for gender discrimination. See Pretrial Order (Doc. #29) at 5. Under elements for the claim, she lists the following:

(continued...)

this claim. Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII. See Simms, 165 F.3d at 1326.[19] To exhaust administrative remedies, a plaintiff generally must present claims to the EEOC or authorized state agency as part of her administrative charge and receive a right-to-sue letter based on that charge. See id. The charge "shall be in writing and signed and shall be verified," 29 C.F.R. § 1601.9, and must at a minimum identify the parties and "describe generally the action or practices complained of," 29 C.F.R. § 1601.12(b). The charge tells the EEOC or state agency what to investigate, provides it the opportunity to conciliate the claim, and gives the charged party notice of the alleged violation. See Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 799 (10th Cir. 1997). In a deferral state such as Kansas, a Title VII claimant must file an administrative charge within 300 days of the alleged unlawful act. See Peterson v. City of Wichita, Kan., 888 F.2d 1307, 1308 (10th Cir. 1989) (applying 42 U.S.C. § 2000e-5(f)(1)). Here, plaintiff filed her EEOC complaint on April 17, 2006. Thus, the administrative complaint could potentially cover discriminatory acts which occurred from June 21, 2005 (300 days before April 17, 2006) to April 17, 2006 (the date on which plaintiff filed her EEOC charge).[20]

---

[18](...continued)
  i. Defendant is an Employer governed by Title VII and the rules of the EEOC. (Uncontroverted)
  ii. Plaintiff is a female and a member of a protected class. (Uncontroverted)
  iii. Defendant acted unlawfully in taking employment actions based on gender.
  iv. Plaintiff was adversely affected by the unlawful actions.

Id. at 5-6. Read broadly, these elements are sufficient to include a claim for discriminatory failure to train.

[19] Under Tenth Circuit law, the filing of an EEOC charge is jurisdictional but the timeliness of such charge is similar to a statute of limitations, which is subject to waiver, estoppel and equitable tolling. See Jones v. Runyon, 91 F.3d 1398, 1399 n.1 (10th Cir. 1996); Williams v. Meese, 926 F.2d 994, 996 n.1 (10th Cir. 1991).

[20] Plaintiff does not assert that the time for filing an administrative complaint should
(continued...)

Defendant argues that plaintiff's EEOC complaint did not allege failure to train. Defendant's statement of facts, however, does not include evidence regarding the contents of plaintiff's EEOC complaint. See Defendant's Memorandum (Doc. #28) at 2-8. In the argument section of its brief, defendant cites Exhibit 9 – which contains a copy of plaintiff's EEOC complaint – and asserts that plaintiff did not allege failure to train. See id. at 19. Because defendant did not include these facts in its statement of facts as required by D. Kan. Rule 56.1, these facts are not properly before the Court. Even considering them, however, defendant's motion is without merit.

Defendant contends that failure to train constitutes a discrete act of discrimination for which plaintiff must file a separate administrative complaint. See Defendant's Memorandum (Doc. #28) at 18-19. The cases which defendant cites, however, involve plaintiffs who attempted to use a continuing violation theory to extend coverage of their administrative complaints to employment acts which occurred before or after the applicable filing period. In National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the United States Supreme Court ruled that Title VII requires a plaintiff to file a timely administrative charge for each individual act of discrimination, and that plaintiff cannot rely on a continuing violation theory to bring suit for related acts which occurred more than 300 days before filing the administrative charge. See id. at 113-15. Similarly, in Martinez v. Potter, 347 F.3d 1208 (10th Cir. 2003), the Tenth Circuit found that a plaintiff cannot use a continuing violation theory to bring suit for employment acts which occurred after filing the EEOC charge. See id. at 1210-11. Under these cases, plaintiff cannot bring suit for discrete employment acts which occurred prior to June 21, 2005 (300 days before April 17, 2006), or after

---

[20](...continued)
be equitably tolled.

April 17, 2006 (the date on which she filed her administrative charge).[21] The cases, however, do not address whether plaintiff may bring suit for discrete employment acts which occurred between June 21, 2005 and April 17, 2006.

To determine whether plaintiff has exhausted administrative remedies for failure to train between June 21, 2005 and April 17, 2006, the Court must determine the scope of allegations contained in plaintiff's EEOC charge. See Jones v. United Parcel Serv., Inc., 502 F.3d 1176, 1186 (10th Cir. 2007). In determining whether plaintiff has exhausted administrative remedies as to a particular claim, the Court liberally construes the administrative charge. See id. In general, plaintiff's claim in this Court is limited by the scope of the administrative investigation which can reasonably be expected to follow from discriminatory acts which plaintiff alleged in the administrative charge. See id. Plaintiff's charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim. See id. (citing Martinez, 347 F.3d 1208 at 1210; Morgan, 536 U.S. at 114).

> According to Exhibit 9, plaintiff alleged the following in her administrative charge:
>
> I have been employed with the above named employer since 1986. I have worked in various positions.
>
> In the past three years, I have applied for seven jobs. My most recent applications were October 2005, when I applied for the Superintendent of Water, January 2006, when I applied for the Supervisor of Water Distribution, and March 2006, when I applied for the Supervisor of Meters.
>
> I believe I was not selected for these positions because of my gender, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

---

[21] Plaintiff claims that from 2003 through 2006, defendant failed to train her because of gender. See Pretrial Order (Doc. #29) at 4. Under Morgan and Martinez, it appears that plaintiff has failed to exhaust administrative remedies for any failure to train which may have occurred prior to June 21, 2005 or after April 17, 2006.

14

Id.

Defendant argues that in the administrative charge, plaintiff did not allege failure to train. While this appears true, it does not necessarily follow that failure to train would fall outside the scope of administrative investigation which could reasonably be expected to follow from the discriminatory acts which plaintiff alleged. In the administrative complaint, plaintiff alleged that defendant failed to promote her to three positions, including supervisor. In response to defendant's summary judgment motion, plaintiff contends that for the supervisor position, her score would have been equal to Cox if defendant would have allowed her to attend the backflow tester certification class. See Plaintiff's Opposition (Doc. #30) at 7. On this record, the Court cannot determine as a matter of law that plaintiff's failure to train claim is so unrelated to her failure to promote claim that it would fall outside the scope of the administrative investigation which could reasonably be expected to follow from the allegations of the administrative complaint.[22] On this record, defendant has not shown as a matter of law that plaintiff did not exhaust administrative remedies on her failure to train claim.[23] Defendant is not entitled to summary judgement on this ground.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. #27) filed February 13, 2008 be and hereby is **SUSTAINED in part.** Defendant is entitled to judgment on plaintiff's claim that because of gender, it did not promote her to superintendent or

---

[22] Defendant contends that the EEOC did not investigate a failure to train claim. See Defendant's Memorandum (Doc. #28) at 19; Defendant's Reply Memorandum In Support Of Motion For Summary Judgment (Doc. #33) filed April 9, 2008 at 16. The record, however, is not developed sufficiently for the Court to find this fact as a matter of law. Moreover, defendant cites no authority which supports that the Court should look to what the EEOC actually investigated, as opposed what investigation can reasonably be expected to follow from the discriminatory acts alleged in the administrative charge.

[23] Defendant's motion does not challenge the merits of the failure to train claim.

15

supervisor. Plaintiff's claim for discriminatory failure to train remains in the case.

Dated this 9th day of May, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil<br>Kathryn H. Vratil<br>United States District Judge